1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

PAUL F. DONAHUE,                                    3:13-cv-000601-HDM-WGC

7

                                    Plaintiff,      **REPORT & RECOMMENDATION OF**
                                                    **U.S. MAGISTRATE JUDGE**

8

        v.

9

CAROLYN W. COLVIN,
Acting Commissioner of Social Security.

10

                                    Defendant.

11

12           This Report and Recommendation is made to the Honorable Howard D. McKibben,

13   Senior United States District Judge. The action was referred to the undersigned Magistrate Judge

14   pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the

15   court is Plaintiff Paul F. Donahue's Motion for Reversal of the Commissioner's Decision. (Doc. #

16   9.)[1] Defendant Commissioner filed a Cross-Motion to Affirm (Doc. # 13) and Opposition to

17   Plaintiff's motion (Doc. # 14).[2] After a thorough review, the court recommends that Plaintiff's

18   motion be denied and the Commissioner's cross-motion be granted.

19                                       **I. BACKGROUND**

20           Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental

21   Security Income (SSI) under Titles II and XVI of the Social Security Act, alleging disability

22   beginning on April 17, 2008. (Administrative Record (AR) 175-183.)[3]

23           The Commissioner denied the application initially and on reconsideration. (AR  20-21,

24   _____

25           [1] Refers to court's docket number.

26           [2] These documents are identical.

27           [3] According to the Commissioner, Plaintiff's alleged onset date begins during a previously adjudicated
     period where Plaintiff applied for benefits, and his application was denied; therefore, the ALJ evaluated Plaintiff's
28   disability claim beginning on March 21, 2009, the day after the final and binding decision from his previously
     denied application. (Docs. # 13/14 at 2 n. 2.)

112-115, 120-126.) Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ) to challenge the Commissioner's determination. (AR 127-128.) The ALJ held a hearing on June 6, 2012. (AR 31-72.) Plaintiff was present at the hearing, represented by counsel, and testified. (AR 31-72.) Plaintiff's brother and a vocational expert (VE) also gave testimony. (AR 31-72.)

The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on June 26, 2012, finding Plaintiff was not disabled. (AR 27-36.) Plaintiff appealed and the Appeals Council denied review. (AR 1-4, 20.) Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff now appeals the ALJ's decision to the District Court. (Doc. # 9.) Plaintiff argues that the ALJ improperly failed to make any credibility findings regarding the testimony of Plaintiff and his witness (his brother) about the pain and other symptoms from which Plaintiff claims to suffer. (*Id*.)

Conversely, the Commissioner argues that the ALJ reasonably concluded that Plaintiff's allegations were not supported by the evidence. (Docs. # 13/14.)

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, --- F.3d --- , 2014 WL 3397218, at * 11 (9th Cir. July 14, 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility,

- 2 -

resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, --- F.3d --- , 2014 WL 3397218, at * 11 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

### A. Five-Step Sequential Process

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4); *see also Barnhart v. Thomas*, 540

1   U.S. 20, 24 (2003). "'The burden of proof is on the claimant at steps one through four, but shifts

2   to the Commissioner at step five.'" *Garrison*, --- F.3d --- , 2014 WL 3397218, at * 13 (quoting

3   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

4        In the first step, the Commissioner determines whether the claimant is engaged in

5   "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied.

6   20 C.F.R. §  404.1520(a)(4)(i), (b); §  416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant

7   is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

8        The second step requires the Commissioner to determine whether the claimant's

9   impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and

10  § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits

11  the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are

12  "the abilities and aptitudes necessary to do most jobs[,]" which include:

13         (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,
           reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking;
14         (3) Understanding, carrying out, and remembering simple instructions; (4) Use of
           judgment; (5) Responding appropriately to supervision, co-workers and usual
15         work situations; and (6) Dealing with changes in a routine work setting.

16  20 C.F.R. §  404.1521 and §  416.921. If a claimant's impairment is so slight that it causes no

17  more than minimal functional limitations, the Commissioner will find that the claimant is not

18  disabled. 20 C.F.R.§  404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner

19  finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

20        In the third step, the Commissioner looks at a number of specific impairments listed in 20

21  C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the

22  impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.

23  § 404.1520(a)(4)(iii), (d) and §  416.920(a)(4)(iii), (c). The Commissioner presumes the Listed

24  Impairments are severe enough to preclude any gainful activity, regardless of age, education, or

25  work experience. 20 C.F.R. §  404.1525(a). If the claimant's impairment meets or equals one of

26  the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed

27  disabled. 20 C.F.R. §  404.1520(a)(4)(iii), (d), §  416.920(d). If the claimant's impairment is

28  severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to

1  step four. *Yuckert*, 482 U.S. at 141.

2      At step four, the Commissioner determines whether the claimant can still perform "past

3  relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

4  relevant work is that which a claimant performed in the last fifteen years, which lasted long

5  enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R.

6  § 404.1565(a) and § 416.920(b)(1).

7      In making this determination, the Commissioner assesses the claimant's "residual

8  functional capacity" (RFC) and the physical and mental demands of the work previously

9  performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231

10  (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R.

11  § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence,

12  including the claimant's and others' descriptions of limitation, and medical reports, to determine

13  what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and

14  § 416.945(a)(3).

15      A claimant can return to previous work if he or she can perform the "actual functional

16  demands and job duties of a particular past relevant job" or "[t]he functional demands and job

17  duties of the [past] occupation as generally required by employers throughout the national

18  economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and

19  citation omitted).

20      If the claimant can still do past relevant work, then he or she is not disabled for purposes

21  of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally,

22  a claimant who is physically and mentally capable of performing past relevant work is not

23  disabled, whether or not he could actually obtain employment.").

24      If, however, the claimant cannot perform past relevant work, the burden shifts to the

25  Commissioner to establish at step five that the claimant can perform work available in the

26  national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-

27  42, 144. This means "work which exists in significant numbers either in the region where such

28  individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant

1   cannot do the work he or she did in the past, the Commissioner must consider the claimant's

2   RFC, age, education, and past work experience to determine whether the claimant can do other

3   work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

4   testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094,

5   1100 (9th Cir. 1999).

6        "The grids are matrices of the four factors identified by Congress—physical ability, age,

7   education, and work experience—and set forth rules that identify whether jobs requiring specific

8   combinations of these factors exist in significant numbers in the national economy." *Lockwood v.*

9   *Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and

10  citation omitted). The Grids place jobs into categories by their physical-exertional requirements,

11  and there are three separate tables, one for each category: sedentary work, light work, and

12  medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative

13  notice of the numbers of unskilled jobs that exist throughout the national economy at the various

14  functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's

15  ability to find work, including the claimant's age, education and work experience. *Id*. For each

16  combination of factors, the Grids direct a finding of disabled or not disabled based on the

17  number of jobs in the national economy in that category. *Id*.

18        The Commissioner may not rely solely on the Grids unless they accurately and

19  completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998

20  (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where

21  the claimant suffers from non-exertional limitations that are "sufficiently severe so as to

22  significantly limit the range of work permitted by his exertional limitation." *Hoopai v. Astrue*,

23  499 F.3d 1071, 1076 (9th Cir. 2007) (internal quotation marks and citation omitted).[4] Further,

24  where the Commissioner finds that a nonexertional limitation alone is severe (at step two of the

25  sequential process) (absent any exertional limitation), the Commissioner is not required to seek

26  ───────────────────

27        [4] "[S]atisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not
    dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to
28  invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai*, 499 F.3d at
    1076.

the assistance of a vocational expert at step five unless the nonexertional limitations are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

If the ALJ relies on a vocational expert, he can call upon the vocational expert to testify as to: "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy.'" *Garrison,* --- F.3d --- , 2014 WL 3397218, at * 13 (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (alteration original)). "The ALJ may pose hypothetical questions to the expert that 'set out all of the claimant's impairments' for the VE's consideration." *Id*. (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). "'The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record.'" *Id*. (quoting *Tackett*, 180 F.3d at 1101). "The testimony of a [VE] is valuable only to the extent that it is supported by medical evidence' and has 'no evidentiary value if the assumptions in the hypothetical are not supported by the record.'" *Id*. (quoting *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)).

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009).

**B. ALJ's Findings in this Case**

The ALJ applied the five-step sequential evaluation process and found, at step one, that Plaintiff had not engaged in substantial gainful activity since March 21, 2009. (AR 30.)

At step two, the ALJ found it was established that Plaintiff suffered from the following severe impairments: undifferentiated schizophrenia, hearing loss corrected with hearing aide, and back pain of uncertain etiology. (AR 30.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 30.)

At step four, the ALJ found Plaintiff has the RFC to perform light work as defined in 20

C.F.R. § 404.1567(b) and 416.967(b) with no more than occasional posturals; no work requiring extreme acuity of hearing as part of the job; the claimant requires a hearing aide; and no more than occasional contact with the general public due to mental health symptoms. (AR 31-34.)

The ALJ concluded Plaintiff is unable to perform any past relevant work. (AR 34.)

Finally, at step five, considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. (AR 34-35.) The VE identified the following jobs: small parts assembler (Dictionary of Occupational Titles (DOT) 739.687-030); small products assembler I (DOT 706.684-022); and office helper (DOT 239.567-010). (AR 35.) Therefore, the ALJ concluded Plaintiff was not disabled from March 21, 2009, through the date of the decision. (AR 35.)

**C. Credibility**

**1. Summary of Argument**

Plaintiff argues that he and his brother gave extensive testimony detailing his debilitating symptoms, yet the ALJ failed to make any credibility findings as to either of them; therefore, the ALJ did not cite specific, clear and convincing reasons for finding Plaintiff or his brother less than credible. (Doc. # 9.) As a result, Plaintiff contends the record is fully developed and their testimony should be credited and the matter should be remanded for the payment of benefits. (*Id.*)

The Commissioner acknowledges that an ALJ is required to make specific credibility findings, and argues that the ALJ did in fact consider Plaintiff's testimony and subjective complaints in making a credibility determination. (Docs. # 13/14 at 5.) First, the Commissioner points to the ALJ's discussion of Plaintiff's testimony that he was working full time and the fact that he held several other jobs after his alleged disability onset date, and was actively looking for jobs. (*Id.*) The Commissioner asserts that as such the ALJ reasonably concluded Plaintiff's ability to work was not consistent with his claim of disability.

Second, the Commissioner states that the ALJ found that Plaintiff's self-reported activities supported a finding that he could work. (Docs. # 13/14 at 6, AR 32.) Despite allegations of disabling symptoms, the ALJ noted Plaintiff cared for his personal needs, prepared

simple meals, did household chores, went shopping, used public transportation and shopped in stores. (*Id.*, AR 32, 240-242.) He also admitted to being able to follow instructions and handle changes in routine well. (*Id.*, AR 32, 244-45.) As such, the Commissioner contends the ALJ reasonably determined Plaintiff's ability to perform a significant number of routine activities undermined his claim of disabling functional limitations. (*Id.*)

Third, the Commissioner asserts that the ALJ considered Plaintiff's treatment records starting in March 2009, and discussed that Plaintiff's mental health progress notes showed that when he was compliant with treatment his symptoms were well-managed with medication. (Docs. # 13/14 at 6, AR 487, 489-90, 492-94, 498, 502, 503, 555-56, 558.) In addition, the ALJ noted that his symptoms increased when he stopped taking his medication in February and December 2010 (*id.*, AR 309, 408, 500), but improved when he resumed his medication. (*Id.*, AR 409, 489.) Regarding his complaints of back pain, the ALJ explained that the clinical findings were minimal. (*Id.*, AR 33, 365.) Thus, the Commissioner argues that the ALJ reasonably concluded Plaintiff's physical treatment notes did not support his claim of disabling symptoms.

Fourth, the Commissioner indicates that the ALJ reasonably rejected complaints of greater restriction than she found based on the opinions of two consultative examiners and two State agency medical consultants. (Docs. # 13/14, AR 33-34, 420-25, 439, 440, 441, 449-65, 513-29, 533-38, 542.)

Finally, the Commissioner argues that the regulations do not require the ALJ to provide express reasons for rejecting testimony from each lay witness. (Docs. # 13/14 at 9.) Nevertheless, if the court finds that the ALJ erred in not explicitly addressing Plaintiff's brother's testimony, the Commissioner claims this was a harmless error because it was inconsequential to the ultimate nondisability determination because Plaintiff's brother did not describe any limitations beyond those described by Plaintiff. (*Id.*)

### 2. Plaintiff's Testimony

Plaintiff testified that he had been working part-time for Maverick Country Stores for half of 2010 through the end of 2011, working the register, stocking shelves and cleaning. (AR 56-57.) He testified that he was able to perform the job well, and was terminated because he was

1    working off the clock. (AR 57.) He also stated that at the time of the hearing he was working full

2    time for Contractors Resource, Incorporated, at Urban Outfitters, forty hours a week for $17 an

3    hour. (AR 58.) He did indicate this was a temporary job that would be over in a week or two.

4    (AR 59.)[5] He also worked for Nevada Cement Company. (AR 59.)

5         Plaintiff testified that he finds these jobs through Craigslist or JobConnect and other

6    online job resource websites. (AR 59.) He admitted that he was actively seeking employment.

7    (AR 59.)

8         Plaintiff went on to testify that he lives with his brother. (AR 62.) His treating doctor is

9    Dr. Kim at Nevada Mental Health, whom he sees once every three months and is prescribed

10   medication. (AR 63.) The medication makes him a calmer person. (AR 64.) He has a counselor

11   at Nevada Mental Health. (AR 64.) He claimed that his lower back was fractured. (AR 64.)

12        With respect to his daily activities, he testified that he hangs out at the house, works on

13   the computer, naps, and watches television. (AR 65.) He goes to the grocery store, prepares

14   meals, does a little bit of cleaning, and goes fishing every now and then. (AR 65-66.) When

15   asked about his ability to walk, he said "I think my walk's not bad." (AR 68.) Sitting is difficult

16   for him because of his lower back pain. (AR 68-69.) He can stand fine. (AR 69.) He cannot lift

17   more than twenty to thirty pounds without pain. (AR 69.)

18        He testified that his schizophrenic behavior is his biggest obstacle to employment. (AR

19   69.) It manifests itself in depression, delusions, hallucinations, disorganized speech, and suicidal

20   tendencies. (AR 69.) He is, however, able to work when he gets a job. (AR 69.) He tries hard to

21   seek employment. (AR 69.)

22        He stated that he has schizophrenic behavior and the medication causes side effects. (AR

23   72.) As a result, he contends he cannot maintain employment. (AR 72.) He referenced being

24   hospitalized (but not recently) and being on the drug Haldol which he characterized as making

25   him "almost catatonic." (AR 72-73.) He hears voices, has racing thoughts, sees things, feels like

26   _____

27        [5] It appears that because of the part-time nature of the job at Maverick Country Stores and limited duration
     of the job with Contractors Resource, Inc., this work was not considered "substantial gainful employment" so as to
28   preclude a disability finding at step one. *See* 20 C.F.R. § § 1520(b), 416.920(b), 404.1572, 416.972, 404.1574(b),
     416.974(b).

- 10 -

people are beside him when they are not. (AR 73.) His medications cause him blurred vision, muscle twitches, lack of concentration and short-term memory. (AR 74.) He feels drowsy as well as "loopy or drunk" when he's on the medication. (AR 74.)

He then testified that his brother cooks, cleans and goes to the grocery store, although he acknowledged that sometimes he goes to the store on his own. (AR 75.)

He still experiences schizophrenic behavior whether he is on or off his medication; however, he is able to deal with it better when he is on the medication. (AR 84.)

**3. Plaintiff's Brother's Testimony**

Plaintiff's brother, Mark Donahue, testified that he has lived with his brother since 2007. (AR 76-77.) He stated that when his brother does not take his medication he has confused thoughts, difficulty concentrating and doing normal tasks, he is paranoid, argumentative and difficult to be around. (AR 77.) He also discussed side effects when his brother does take his medication, and mentioned that on one medication he slept for four or five days in a row. (AR 78-79.) His concentration is not very good on the medication either. (AR 78.) He indicated that his brother has difficulty staying on the medication because of the side effects. (AR 81.) He did state that when his brother takes his medication his clarity of thought is improved. (AR 82.)

**4. ALJ's Findings**

First, the ALJ stated that Plaintiff alleged disability based on undifferentiated schizophrenia and back problems and asserted his impairments caused him to experience anger issues, racing thoughts, hallucinations, and chronic back pain. (AR 31.) With respect to his functional limitations, the ALJ noted that Plaintiff reported problems with concentration, being around others, completing tasks, standing, walking, sitting, lifting heavy items, squatting, bending and climbing stairs. (AR 31.)

Second, the ALJ concluded that despite these allegations, at various points within his disability application and within the objective evidence he admitted he has no problems taking care of his personal needs; he does household chores including laundry and household repairs; he currently works in a retail department store; he lives with his brother; he prepares his own meals; he goes out alone; he uses public transportation; he goes shopping without incident; he is able to

1   handle his money; he follows instructions well; he handles changes in routine well; he looks for

2   jobs regularly on the computer; and he goes to the community center regularly; he watches

3   television and reads regularly; he is able to walk several miles without resting. (AR 32.)

4   Third, the ALJ stated that Plaintiff's work history revealed his earnings were steady until

5   he stopped working, and he testified at the hearing that he was currently working at a retail

6   department store in a temporary position. (AR 32.) The ALJ concluded that Plaintiff's consistent

7   work history reflected a good motivation to work, and that his ability to work currently, even less

8   than full time, did not generally support his alleged debilitating level of functioning. (AR 32.)

9   Fourth, the ALJ turned to the objective medical evidence, concluding that it did not

10  provide strong support for Plaintiff's allegations of disabling symptoms and limitations. (AR 32.)

11  The ALJ indicated Plaintiff had a distant history of mental health treatment and polysubstance

12  abuse, along with hospitalizations for suicidal ideation in May 2008, which was considered when

13  Plaintiff's prior application for benefits was denied. (AR 32.) With respect to the evidence near

14  the time at issue, from March 2009 forward, the ALJ stated that Plaintiff generally treats with

15  psychotropic medication and outpatient therapy, and the treatment notes from March through

16  August 2009 indicate he was doing well managing his symptoms with medication. (AR 32.) The

17  ALJ notes that after August 2009, Plaintiff stopped going to his therapy appointments and

18  stopped taking his medication, and a February 2010 evaluation indicated increased symptoms

19  based on his non-compliance. (AR 32.)

20  Plaintiff underwent a court-ordered mental health evaluation in March 2010, where he

21  reported a history of schizophrenia treated with anti-psychotic medication. (AR 32.) The

22  provider indicated that objectively, he demonstrated a constricted affect, full orientation, intact

23  memory, no psychotic symptoms, normal speech and cooperative demeanor. (AR 32.) He was

24  assessed with a Global Assessment Functioning (GAF) score of 56, indicating a moderate level

25  of symptoms, which the ALJ presumed was based on his self-report. (AR 32.) Plaintiff then

26  resumed his medication and reduced symptoms were noted in his records from May 2010

27  through August 2010. (AR 32.) He then stopped taking his medication again and demonstrated

28  more hostile, paranoid behavior in December 2010 treatment notes. (AR 32.)

- 12 -

Plaintiff underwent a consultative psychological examination by Dr. Stanfield in March 2011. (AR 33.) Plaintiff complained of schizophrenia along with hallucination symptoms and fear/worrying, but denied any depressive symptoms. (AR 33.) Dr. Stanfield noted a cooperative demeanor, no psychomotor abnormalities, normal speech, no psychotic symptoms, appropriate thought content, full orientation, adequate cognitive functioning and memory, adequate comprehension and intact judgment/insight. (AR 33.) The ALJ noted that Dr. Stanfield diagnosed Plaintiff with schizophrenia by self-report only, and a GAF score of 59, indicating a moderate level of symptoms. (AR 33.) Dr. Stanfield concluded Plaintiff had no objectively significant limitations, but may have an impairment in social functioning based on his self-report of unstable employment and a communication style which may not have the best impression on employers. (AR 33.)

Based on a review of the record, including Dr. Stanfield's evaluation, State agency psychological consultants determined Plaintiff had some moderate limitations with interacting with the general public. (AR 33.) The ALJ gave these opinions significant weight because they were internally supported by Dr. Stanfield's consultative examination findings and were generally consistent with treatment records and Plaintiff's self-reports of daily functioning. (AR 33.)

The ALJ continued to discuss Plaintiff's medical records, indicating that treatment notes from February 2011 through April 2012 documented controlled/manageable symptoms primarily consisting of anxiety due to situational stressors, general medical conditions and some intermittent alcohol use. (AR 33.) The ALJ state that these records generally lacked significant complaints or objective findings when Plaintiff was compliant with his psychotropic medication. (AR 33.)

Plaintiff underwent a one-time general vocational evaluation in March 2011, and the results were of no functional significance, primarily suggesting that Plaintiff pursue further vocational exploration based on his own preferences. (AR 33.) The ALJ did note that the evaluation contained a generic statement that Plaintiff's mental impairments were an impediment to his employment and vocational rehabilitation was appropriate. (AR 33.) The ALJ did not

accord any weight to this assessment other than acknowledging Plaintiff's mental issues are a severe impairment, but any further limitations based on mental functioning were not supported by specific findings within this evaluation. (AR 33.)

The ALJ then noted Plaintiff's history of back pain complaints, noting that he presented to the emergency room in January 2010, but clinical findings were minimal. (AR 33.) She also indicated that when he complained of bilateral foot pain in December 2010, it was related to not having correctly fitted shoes at a time when he was walking several miles a day. (AR 33.)

Plaintiff underwent a consultative internal medicine evaluation in March 2011 with Dr. Gerson. (AR 33-34.) Plaintiff complained primarily of back pain, but stated it did not radiate into his legs and gave him difficulty lifting over ninety pounds. (AR 33.) He denied orthopedic or neurological treatment related to this contention. (AR 33-34.)  Plaintiff's examination was normal overall, although Dr. Gerson noted a slightly reduced range of motion. (AR 34.) Dr. Gerson concluded Plaintiff was capable of a nearly full range of light work. (AR 34.)

A state medical agency consultant also concluded Plaintiff was limited to light work with limited exposure to hazards. (AR 34.) The ALJ gave the opinions of Dr. Gerson and the state agency consultant great weight because they were supported by clinical findings from the consultative examination and the minimal findings from the lack of treatment records related to his physical impairments. (AR 34.)

The ALJ stated that neither the objective evidence nor the factors described in Social Security Ruling 96-7p provide a basis for fully accepting Plaintiff's allegations of disabling symptoms and limitations. (AR 34.)

**5. Standard**

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v.  Halter*, 242 F.3d 1144, 1147 (9th Cir.  2001) (citing SSR 96-7p (1996)).  Thus, a claimant's credibility is often crucial to a finding of disability.  The ALJ is responsible for determining credibility.  *Meanel v.  Apfel*, 172 F.3d 1111, 1113 (9th Cir.  1999); *Magallanes*, 881 F.2d at 750; *see also Lingenfelter v.  Astrue*, 504

F.3d 1028, 1035-36 (9th Cir. 2007).

In general, when deciding to accept or reject a claimant's subjective symptom testimony, an ALJ must engage in two steps: an analysis under *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (the "*Cotton* test"), and an analysis of the credibility of the claimant's testimony regarding the severity of his or her symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1529 (adopting two-part test).

First, under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective evidence of an underlying impairment 'which could reasonably be expected to produce pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (citing 42 U.S.C. § 423(d)(5)(A)); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010)*; Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). This test "imposes only two requirements on the claimant: (1) [he or] she must produce objective medical evidence of an impairment or impairments; and (2) [he or] she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis original); *see also* 20 C.F.R. § 404.1529(a)-(b).

"Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted); *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, --- F.3d ---, 2014 WL at * 16 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell*, 947 F.2d at 345 (quoting *Elam v. Railroad*

*Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (internal quotation marks and citation omitted).

An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

When analyzing credibility, an ALJ may properly consider medical evidence in the analysis; however, the ALJ may not reject subjective pain testimony "on the sole ground that it is not fully corroborated by objective medical evidence[.]" *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ properly determined credibility where claimant's testimony was contradictory to and unsupported by objective medical evidence).

**6. Analysis**

Plaintiff contends that the ALJ erred in failing to set forth specific, clear and convincing reasons for finding Plaintiff less than credible and in failing to address Plaintiff's brother's testimony at all.

First, with respect to Plaintiff's credibility, the court finds that the ALJ sufficiently set forth specific, clear and convincing reasons for finding Plaintiff less than credible that were supported by substantial evidence in the record. While the ALJ did not specifically quote from or reference particular portions of the transcript of Plaintiff's testimony, the ALJ did generally describe Plaintiff's symptom and limitation testimony:

> The claimant alleged disability based on undifferentiated schizophrenia and back problems. He asserted his impairments caused him to experience anger issues, racing thoughts, hallucinations, and chronic back pain. Regarding functional limitations, he reported problems with concentration, being around others, completing tasks, standing, walking, sitting, lifting heavy items, squatting, bending and climbing stairs.

(AR 31.)

While it does not explicitly mention every facet of Plaintiff's testimony, the ALJ accurately summarizes the primary points of symptom and limitation testimony given by Plaintiff at the hearing. The ALJ then listed a host of reasons for finding the subjective symptom and limitations claims less than credible, including facts she deemed inconsistent with these claims that were in his testimony and other portions of his application. For example, she noted his admission that he can take care of his personal needs, he does some household chores, he was working in a retail department store, he prepares his own meals, he goes out alone and goes shopping. (AR 32.) She also cited to the fact that he is able to handle money, follows instructions well, handles changes in routine well, looks for jobs regularly on the computer, watches television and is able to walk. (AR 32.) She specifically noted his current ability to work, which she said did not generally support the debilitating level of functioning alleged by Plaintiff. (AR 32.)

The ALJ then went into great detail as to how his symptoms were not supported by the objective medical evidence, including his own scant medical records and the evaluations by consultative examiners and opinions of consulting providers. (AR 32-34.) Plaintiff does not assert that he disputes the ALJ's findings in this regard.

Thus, contrary to Plaintiff's contention that the ALJ wholly failed to consider Plaintiff's testimony, the court finds that the ALJ did not err. That is to say, the ALJ's description of Plaintiff's subjective symptoms and limitations and the reasons for finding him less than credible are "sufficiently specific" such that the court was able to conclude the ALJ found Plaintiff's testimony less than credible "on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell,* 947 F.2d at 345 (quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)).

Second, the court will address the topic of Plaintiff's brother's testimony. Plaintiff is correct that the ALJ does not reference this testimony in her decision. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir.

2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). "[C]ompetent lay witness testimony *cannot* be disregarded without comment ... and ... in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness[.]'" *Id*. (internal quotation marks omitted) (emphasis original).  The Ninth Circuit does not require "the ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony of one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. (citing *Valentine c. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony."). This is consistent with the regulations. *See id*. (citing 20 C.F.R. § § 404.1529(c)(3); 404.1545(a)(3)).

Because lay witness testimony "*cannot* be disregarded without comment," *id*. (citation omitted, emphasis original), the ALJ erred in this case because she did not specifically discuss her reasons for discrediting or disregarding Plaintiff's brother's testimony. Nevertheless, as the Ninth Circuit found in *Molina*, this error was harmless. "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id*. (internal quotation marks and citations omitted). In *Stout v. Comm'r of Soc. Sec. Admin*., the Ninth Circuit explained: "where the ALJ's error lies in a failure to properly discuss competent lay witness testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d 1050, 1056 (9th Cir. 2006). In *Stout*, the court found the ALJ's error in not considering the lay witness testimony was not harmless ("inconsequential to the ultimate nondisability determination") because it identified limitations not considered by the ALJ, was uncontradicted by the record, and was highly probative of the claimant's inability to work in a competitive environment. *Id*. at 1055.

In addition, the Ninth Circuit has held that where "the ALJ did not make a legally

sufficient adverse credibility finding with regard to the [claimant's] own testimony, [it could not] say with respect to the [lay witness] testimony that 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout*, 454 F.3d at 1056). In *Molina*, the court interpreted this to mean that the ALJ's failure to discuss the lay witness testimony in *Robbins* "would have been harmless if the ALJ had provided legally sufficient reasons for rejecting the claimant's own testimony." *Molina*, 674 F.3d at 1116 (citation omitted).

"[I]f an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, [the court] cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations." *Id*. at 1121. In addition, "where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, [the court] cannot reverse the agency merely because the ALJ did not clearly link his determination to those reasons." *Id*. (internal citations and quotation marks omitted). In other words, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Id*. at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). In *Molina*, the court found the ALJ's failure to discuss the family members' testimony was harmless error because the testimony "did not describe any limitations beyond those [the claimant] herself described" and which the ALJ discussed and rejected based on "well-supported, clear and convincing reasons." *Id*.

Here, like *Molina,* Plaintiff's brother did not describe any limitations beyond those the Plaintiff himself described. His brother testified that when he does not take his medication he has confused thoughts, difficulty concentrating and doing normal tasks and is paranoid. (AR 77.) He also testified that some medications make him drowsy or sleepy. (AR 78-79.) He stated that his brother's medication caused side effects, but also that his clarity of thought is improved on the medication. (AR 81-82.) Plaintiff's brother's testimony nearly mirrors his own. For example, Plaintiff testified that medication makes him a calmer person. (AR 64.) He claimed to be

schizophrenic, with manifestations including depression, delusions, hallucinations, disorganized speech and suicidal tendencies. (AR 69.) He discussed being on medication and it causing him side effects, including one drug that made him "almost catatonic" and that he felt drowsy as well as "loopy or drunk" on the medication, and others that caused him blurred vision, muscle twitches, lack of concentration and short-term memory problems. (AR 72-74.) Finally, he testified, consistent with his brother's testimony, that he still experiences schizophrenic behavior whether or not he is on the medication but that he is better able to deal with his symptoms while he is on the medication. (AR 84.)

Plaintiff's brother did not describe any limitations beyond those described by Plaintiff himself, and because the court determined that the ALJ did provide legally sufficient reasons for rejecting Plaintiff's own testimony, the ALJ's error in not providing reasons for rejecting Plaintiff's brother's testimony is harmless.

Therefore, the court concludes the ALJ's decision should be affirmed.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal of the Commissioner's Decision (Doc. # 9) be **DENIED** and that the Commissioner's Cross-Motion for Summary Judgment (Doc. # 13) be **GRANTED**, and the decision of the ALJ be **AFFIRMED**

The parties should be aware of the following:

///
///
///
///
///
///
///
///
///
///

1         1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local

2    Rules of Practice, specific written objections to this Report and Recommendation within fourteen

3    days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and

4    Recommendation" and should be accompanied by points and authorities for consideration by the

5    District Court.

6         2. That this Report and Recommendation is not an appealable order and that any notice of

7    appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

8    until entry of the District Court's judgment.

9

10   DATED: August 11, 2014

11                                                                  
     WILLIAM G. COBB

12                                                                   
     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28